**ZIPPO MANUFACTURING COMPANY, Plaintiff,**

v.

**ZIPPO DOT COM, INC., Defendant.**

**Civil Action No. 96–397 Erie.**

United States District Court,
W.D. Pennsylvania.

Jan. 16, 1997.

Paul I. Pearlman, Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, NY and Ronald J. Rademacher, Wick, Streiff, Meyer, Metz & O'Boyle, Pittsburgh, PA, for plaintiff.

David Henry Dolkas and Colleen Maguire, Gray, Cary, Ware & Freidenrich, Palo Alto, CA, for defendant.

## MEMORANDUM OPINION

McLAUGHLIN, District Judge.

This is an Internet domain name[1] dispute. At this stage of the controversy, we must

---

1. Domain names serve as a primary identifier of an Internet user. *Panavision Intern., L.P. v. To-* *eppen,* 938 F.Supp. 616 (C.D.Cal.1996). Businesses using the Internet commonly use their

decide the Constitutionally permissible reach of Pennsylvania's Long. Arm Statute, 42 Pa. C.S.A. § 5322, through cyberspace. Plaintiff Zippo Manufacturing Corporation ("Manufacturing") has filed a five count complaint against Zippo Dot Com, Inc. ("Dot Com") alleging trademark dilution, infringement, and false designation under the Federal Trademark Act, 15 U.S.C. §§ 1051–1127. In addition, the Complaint alleges causes of action based on state law trademark dilution under 54 Pa.C.S.A. § 1124, and seeks equitable accounting and imposition of a constructive trust. Dot Com has moved to dismiss for lack of personal jurisdiction and improper venue pursuant to Fed.R.Civ.P. 12(b)(2) and (3) or, in the alternative, to transfer the case pursuant to 28 U.S.C. § 1406(a). For the reasons set forth below, Defendant's motion is denied.

## I. BACKGROUND

The facts relevant to this motion are as follows. Manufacturing is a Pennsylvania corporation with its principal place of business in Bradford, Pennsylvania. Manufacturing makes, among other things, well known "Zippo" tobacco lighters. Dot Com is a California corporation with its principal place of business in Sunnyvale, California. Dot Com operates an Internet Web site [2] and an Internet news service and has obtained the exclusive right to use the domain names "zippo.com", "zippo.net" and "zipponews.com" on the Internet.[3]

Dot Com's Web site contains information about the company, advertisements and an application for its Internet news service. The news service itself consists of three levels of membership—public/free, "Original" and "Super." Each successive level offers access to a greater number of Internet newsgroups. A customer who wants to subscribe to either the "Original" or "Super" level of service, fills out an on-line application that asks for a variety of information including the person's name and address. Payment is made by credit card over the Internet or the telephone. The application is then processed and the subscriber is assigned a password which permits the subscriber to view and/or download Internet newsgroup messages that are stored on the Defendant's server in California.

Dot Com's contacts with Pennsylvania have occurred almost exclusively over the Internet. Dot Com's offices, employees and Internet servers are located in California. Dot Com maintains no offices, employees or agents in Pennsylvania. Dot Com's advertising for its service to Pennsylvania residents involves posting information about its service on its Web page, which is accessible to Pennsylvania residents via the Internet. Defendant has approximately 140,000 paying subscribers worldwide. Approximately two percent (3,000) of those subscribers are Pennsylvania residents. These subscribers have contracted to receive Dot Com's service by visiting its Web site and filling out the application. Additionally, Dot Com has entered into agreements with seven Internet access providers in Pennsylvania to permit their subscribers to access Dot Com's news service. Two of these providers are located in the Western District of Pennsylvania.

The basis of the trademark claims is Dot Com's use of the word "Zippo" in the domain names it holds, in numerous locations in its Web site and in the heading of Internet newsgroup messages that have been posted by Dot Com subscribers. When an Internet user views or downloads a newsgroup message posted by a Dot Com subscriber, the word "Zippo" appears in the "Message–Id"

---

business names as part of the domain name (e.g. IBM.com). *Id.* The designation ".com" identifies the user as a commercial entity. *Id.*

2. A "site" is an Internet address that permits the exchange of information with a host computer. *Bensusan Restaurant Corp. v. King*, 937 F.Supp 295 (S.D.N.Y.1996). The "Web" or "World Wide Web" refers to the collection of sites available on the Internet. *Id.*

3. Dot Com has registered these domain names with Network Solutions, Inc. which has contracted with the National Science Foundation to provide registration services for Internet domain names. Once a domain name is registered to one user, it may not be used by another.

and "Organization" sections of the heading.[4] The news message itself, containing text and/or pictures, follows. Manufacturing points out that some of the messages contain adult oriented, sexually explicit subject matter.

## II. STANDARD OF REVIEW

When a defendant raises the defense of the court's lack of personal jurisdiction, the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper. *Mellon Bank (East) PSFS, N.A. v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992) (*citing Carteret Savings Bank v. Shushan*, 954 F.2d 141 (3d Cir.1992), *cert. denied* 506 U.S. 817, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992)). The plaintiff meets this burden by making a prima facie showing of "sufficient contacts between the defendant and the forum state." *Mellon East*, 960 F.2d at 1223 (*citing Provident Nat. Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434 (3d Cir.1987)).

## III. DISCUSSION

### A. Personal Jurisdiction

#### 1. The Traditional Framework

Our authority to exercise personal jurisdiction in this case is conferred by state law. Fed.R.Civ.P. 4(e); *Mellon*, 960 F.2d at 1221. The extent to which we may exercise that authority is governed by the Due Process Clause of the Fourteenth Amendment to the Federal Constitution. *Kulko v. Superior Court of California*, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978).

Pennsylvania's long arm jurisdiction statute is codified at 42 Pa.C.S.A. § 5322(a). The portion of the statute authorizing us to exercise jurisdiction here permits the exercise of jurisdiction over non-resident defendants upon:

(2) Contracting to supply services or things in this Commonwealth.

42 Pa.C.S.A. § 5322(a). It is undisputed that Dot Com contracted to supply Internet news services to approximately 3,000 Pennsylvania residents and also entered into agreements with seven Internet access providers in Pennsylvania. Moreover, even if Dot Com's conduct did not satisfy a specific provision of the statute, we would nevertheless be authorized to exercise jurisdiction to the "fullest extent allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b).

The Constitutional limitations on the exercise of personal jurisdiction differ depending upon whether a court seeks to exercise general or specific jurisdiction over a non-resident defendant. *Mellon*, 960 F.2d at 1221. General jurisdiction permits a court to exercise personal jurisdiction over a non-resident defendant for non-forum related activities when the defendant has engaged in "systematic and continuous" activities in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984). In the absence of general jurisdiction, specific jurisdiction permits a court to exercise personal jurisdiction over a non-resident defendant for forum-related activities where the "relationship between the defendant and the forum falls within the 'minimum contacts' framework" of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny. *Mellon*, 960 F.2d at 1221. Manufacturing does not contend that we should exercise general personal jurisdiction over Dot Com. Manufacturing concedes that if personal jurisdiction exists in this case, it must be specific.

A three-pronged test has emerged for determining whether the exercise of specific personal jurisdiction over a non-resident defendant is appropriate: (1) the defendant must have sufficient "minimum contacts" with the forum state, (2) the claim asserted

---

4. For example, a typical message heading might appear as:

| | |
|---|---|
| Subject: | *subject of the message* |
| From: | *name of person posting message* |
| Date: | *date posted* |
| Message–Id: | *identifying#@news.zippo.com* |
| Reference: | *reference#* |

| | |
|---|---|
| Organization: | Zippo |
| Newsgroups: | *news groups to which sender has subscribed* |

The italicized text represents a generic description of specific information appearing in the message.

against the defendant must arise out of those contacts, and (3) the exercise of jurisdiction must be reasonable. *Id.* The "Constitutional touchstone" of the minimum contacts analysis is embodied in the first prong, "whether the defendant purposefully established" contacts with the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985) (*citing International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 159–60, 90 L.Ed. 95 (1945)). Defendants who "'reach out beyond one state' and create continuing relationships and obligations with the citizens of another state are subject to regulation and sanctions in the other State for consequences of their actions." *Id.* (*citing Travelers Health Assn. v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950)). "[T]he foreseeability that is critical to the due process analysis is ... that the defendant's conduct and connection with the forum State are such that he should reasonably expect to be haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). This protects defendants from being forced to answer for their actions in a foreign jurisdiction based on "random, fortuitous or attenuated" contacts. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). "Jurisdiction is proper, however, where contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183–84 (*citing McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)).

The "reasonableness" prong exists to protect defendants against unfairly inconvenient litigation. *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564–65. Under this prong, the exercise of jurisdiction will be reasonable if it does not offend "traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158. When determining the reasonableness of a particular forum, the court must consider the burden on the defendant in light of other factors including: "the forum state's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief, at least when that interest is not adequately protected by the plaintiff's right to choose the forum; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental substantive social policies." *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564 (internal citations omitted).

### 2. The Internet and Jurisdiction

In *Hanson v. Denckla,* the Supreme Court noted that "[a]s technological progress has increased the flow of commerce between States, the need for jurisdiction has undergone a similar increase." *Hanson v. Denckla,* 357 U.S. 235, 250–51, 78 S.Ct. 1228, 1237–39, 2 L.Ed.2d 1283 (1958). Twenty seven years later, the Court observed that jurisdiction could not be avoided "merely because the defendant did not *physically* enter the forum state." *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184. The Court observed that:

> [I]t is an inescapable fact of modern commercial life that a substantial amount of commercial business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.

*Id.*

Enter the Internet, a global " 'super-network' of over 15,000 computer networks used by over 30 million individuals, corporations, organizations, and educational institutions worldwide." *Panavision Intern., L.P. v. Toeppen,* 938 F.Supp. 616 (C.D.Cal. 1996) (*citing American Civil Liberties Union v. Reno,* 929 F.Supp. 824, 830–48 (E.D.Pa. 1996)). "In recent years, businesses have begun to use the Internet to provide information and products to consumers and other businesses." *Id.* The Internet makes it possible to conduct business throughout the world entirely from a desktop. With this global revolution looming on the horizon, the development of the law concerning the permissible scope of personal jurisdiction based on Internet use is in its infant stages. The

cases are scant. Nevertheless, our review of the available cases and materials [5] reveals that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportional to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. *E.g. CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996). At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. *E.g. Bensusan Restaurant Corp., v. King,* 937 F.Supp. 295 (S.D.N.Y.1996). The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. *E.g. Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328 (E.D.Mo.1996).

■ Traditionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper. *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183–84. Different results should not be reached simply because business is conducted over the Internet. In *CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996), the Sixth Circuit addressed the significance of doing business over the Internet. In that case, Patterson, a Texas resident, entered into a contract to distribute shareware [6] through CompuServe's Internet server located in Ohio. *CompuServe,* 89 F.3d at 1260. From Texas, Patterson electronically uploaded thirty-two master software files to CompuServe's server in Ohio via the Internet. *Id.* at 1261. One of Patterson's software products was designed to help people navigate the Internet. *Id.* When CompuServe later began to market a product that Patterson believed to be similar to his own, he threatened to sue. *Id.* CompuServe brought an action in the Southern District of Ohio, seeking a declaratory judgment. *Id.* The District Court granted Patterson's motion to dismiss for lack of personal jurisdiction and CompuServe appealed. *Id.* The Sixth Circuit reversed, reasoning that Patterson had purposefully directed his business activities toward Ohio by knowingly entering into a contract with an Ohio resident and then "deliberately and repeatedly" transmitted files to Ohio. *Id.* at 1264–66.

In *Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328 (E.D.Mo.1996), the defendant had put up a Web site as a promotion for its upcoming Internet service. The service consisted of assigning users an electronic mailbox and then forwarding advertisements for products and services that matched the users' interests to those electronic mailboxes. *Maritz,* 947 F.Supp. at 1330. The defendant planned to charge advertisers and provide users with incentives to view the advertisements. *Id.* Although the service was not yet operational, users were encouraged to add their address to a mailing list to receive updates about the service. *Id.* The court rejected the defendant's contention that it operated a "passive Web site." *Id.* at 1333–34. The court reasoned that the defendant's conduct amounted to "active solicitations"

---

**5.** *See, generally,* Robert A. Bourque and Kerry L. Konrad, *Avoiding Jurisdiction Based on Internet Web Site,* New York Law Journal (Dec. 10, 1996); David Bender, *Emerging Personal Jurisdiction Issues on the Internet,* 453 PLI/Pat 7 (1996); Comment, Richard S. Zembek, *Jurisdiction and the Internet: Fundamental Fairness in the Networked World of Cyberspace,* 6 Alb.L.J.Sci. & Tech. 339 (1996).

**6.** "Shareware" is software which a user is permitted to download and use for a trial period, after which the user is asked to pay a fee to the author for continued use. *CompuServe,* 89 F.3d at 1260.

and "promotional activities" designed to "develop a mailing list of Internet users" and that the defendant "indiscriminately responded to every user" who accessed the site. *Id.* at 1333–34.

*Inset Systems, Inc. v. Instruction Set,* 937 F.Supp. 161 (D.Conn.1996) represents the outer limits of the exercise of personal jurisdiction based on the Internet. In *Inset Systems,* a Connecticut corporation sued a Massachusetts corporation in the District of Connecticut for trademark infringement based on the use of an Internet domain name. *Inset Systems,* 937 F.Supp. at 162. The defendant's contacts with Connecticut consisted of posting a Web site that was accessible to approximately 10,000 Connecticut residents and maintaining a toll free number. *Id.* at 165. The court exercised personal jurisdiction, reasoning that advertising on the Internet constituted the purposeful doing of business in Connecticut because "unlike television and radio advertising, the advertisement is available continuously to any Internet user." *Id.* at 165.

*Bensusan Restaurant Corp., v. King,* 937 F.Supp. 295 (S.D.N.Y.1996) reached a different conclusion based on a similar Web site. In *Bensusan,* the operator of a New York jazz club sued the operator of a Missouri jazz club for trademark infringement. *Bensusan,* 937 F.Supp. at 297. The Internet Web site at issue contained general information about the defendant's club, a calendar of events and ticket information. *Id.* However, the site was not interactive. *Id.* If a user wanted to go to the club, she would have to call or visit a ticket outlet and then pick up tickets at the club on the night of the show. *Id.* The court refused to exercise jurisdiction based on the Web site alone, reasoning that it did not rise to the level of purposeful availment of that jurisdiction's laws. The court distinguished the case from CompuServe, *supra,* where the user had " 'reached out' from Texas to Ohio and 'originated and maintained' contacts with Ohio." *Id.* at 301.

*Pres–Kap, Inc. v. System One, Direct Access, Inc.,* 636 So.2d 1351 (Fla.App.1994), *review denied,* 645 So.2d 455 (Fla.1994) is not inconsistent with the above cases. In *Pres–Kap,* a majority of a three-judge intermediate state appeals court refused to exercise jurisdiction over a consumer of an on-line airline ticketing service. *Pres–Kap* involved a suit on a contract dispute in a Florida court by a Delaware corporation against its New York customer. *Pres–Kap,* 636 So.2d at 1351–52. The defendant had leased computer equipment which it used to access an airline ticketing computer located in Florida. *Id.* The contract was solicited, negotiated, executed and serviced in New York. *Id.* at 1352. The defendant's only contact with Florida consisted of logging onto the computer located in Florida and mailing payments for the leased equipment to Florida. *Id.* at 1353. *Pres–Kap* is distinguishable from the above cases and the case at bar because it addressed the exercise of jurisdiction over a consumer of on-line services as opposed to a seller. When a consumer logs onto a server in a foreign jurisdiction he is engaging in a fundamentally different type of contact than an entity that is using the Internet to sell or market products or services to residents of foreign jurisdictions. The *Pres–Kap* court specifically expressed concern over the implications of subjecting users of "on-line" services with contracts with out-of-state networks to suit in foreign jurisdictions. *Id.* at 1353.

### 3. Application to this Case

■ First, we note that this is not an Internet advertising case in the line of *Inset Systems* and *Bensusan, supra.* Dot Com has not just posted information on a Web site that is accessible to Pennsylvania residents who are connected to the Internet. This is not even an interactivity case in the line of *Maritz, supra.* Dot Com has done more than create an interactive Web site through which it exchanges information with Pennsylvania residents in hopes of using that information for commercial gain later. We are not being asked to determine whether Dot Com's Web site alone constitutes the purposeful availment of doing business in Pennsylvania. This is a "doing business over the Internet" case in the line of *CompuServe, supra.* We are being asked to determine whether Dot Com's conducting of electronic commerce with Pennsylvania residents con-

stitutes the purposeful availment of doing business in Pennsylvania. We conclude that it does. Dot Com has contracted with approximately 3,000 individuals and seven Internet access providers in Pennsylvania. The intended object of these transactions has been the downloading of the electronic messages that form the basis of this suit in Pennsylvania.

We find Dot Com's efforts to characterize its conduct as falling short of purposeful availment of doing business in Pennsylvania wholly unpersuasive. At oral argument, Defendant repeatedly characterized its actions as merely "operating a Web site" or "advertising." Dot Com also cites to a number of cases from this Circuit which, it claims, stand for the proposition that merely advertising in a forum, without more, is not a sufficient minimal contact.[7] This argument is misplaced. Dot Com has done more than advertise on the Internet in Pennsylvania. Defendant has sold passwords to approximately 3,000 subscribers in Pennsylvania and entered into seven contracts with Internet access providers to furnish its services to their customers in Pennsylvania.

Dot Com also contends that its contacts with Pennsylvania residents are "fortuitous" within the meaning of *World–Wide Volkswagen*, 444 U.S. 286, 100 S.Ct. 559 (1980). Defendant argues that it has not "actively" solicited business in Pennsylvania and that any business it conducts with Pennsylvania residents has resulted from contacts that were initiated by Pennsylvanians who visited the Defendant's Web site. The fact that Dot Com's services have been consumed in Pennsylvania is not "fortuitous" within the meaning of *World–Wide Volkswagen*. In *World–Wide Volkswagen*, a couple that had purchased a vehicle in New York, while they were New York residents, were injured while driving that vehicle through Oklahoma and brought suit in an Oklahoma state court. *World–Wide Volkswagen*, 444 U.S. at 288, 100 S.Ct. at 562–63. The manufacturer did not sell its vehicles in Oklahoma and had not

made an effort to establish business relationships in Oklahoma. *Id.* at 295, 100 S.Ct. at 566. The Supreme Court characterized the manufacturer's ties with Oklahoma as fortuitous because they resulted entirely out the fact that the plaintiffs had driven their car into that state. *Id.*

Here, Dot Com argues that its contacts with Pennsylvania residents are fortuitous because Pennsylvanians happened to find its Web site or heard about its news service elsewhere and decided to subscribe. This argument misconstrues the concept of fortuitous contacts embodied in *World–Wide Volkswagen*. Dot Com's contacts with Pennsylvania would be fortuitous within the meaning of *World–Wide Volkswagen* if it had no Pennsylvania subscribers and an Ohio subscriber forwarded a copy of a file he obtained from Dot Com to a friend in Pennsylvania or an Ohio subscriber brought his computer along on a trip to Pennsylvania and used it to access Dot Com's service. That is not the situation here. Dot Com repeatedly and consciously chose to process Pennsylvania residents' applications and to assign them passwords. Dot Com knew that the result of these contracts would be the transmission of electronic messages into Pennsylvania. The transmission of these files was entirely within its control. Dot Com cannot maintain that these contracts are "fortuitous" or "coincidental" within the meaning of *World–Wide Volkswagen*. When a defendant makes a conscious choice to conduct business with the residents of a forum state, "it has clear notice that it is subject to suit there." *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567. Dot Com was under no obligation to sell its services to Pennsylvania residents. It freely chose to do so, presumably in order to profit from those transactions. If a corporation determines that the risk of being subject to personal jurisdiction in a particular forum is too great, it can choose to sever its connection to the state. *Id.* If Dot Com had not wanted to be amenable to jurisdiction in

---

7. Defendant has cited to: *Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539 (3rd Cir. 1985); *Fields v. Ramada Inn Inc.*, 816 F.Supp. 1033 (E.D.Pa.1993); and *Garofalo v. Praiss*, 1990 WL 97800 (E.D.Pa.1990). We note that these cases all involve the issue of whether advertising can rise to the level of "systematic and continuous" contacts for the purpose of general jurisdiction.

Pennsylvania, the solution would have been simple—it could have chosen not to sell its services to Pennsylvania residents.

Next, Dot Com argues that its forum-related activities are not numerous or significant enough to create a "substantial connection" with Pennsylvania. Defendant points to the fact that only two percent of its subscribers are Pennsylvania residents. However, the Supreme Court has made clear that even a single contact can be sufficient. *McGee*, 355 U.S. at 223, 78 S.Ct. at 201. The test has always focused on the "nature and quality" of the contacts with the forum and not the quantity of those contacts. *International Shoe*, 326 U.S. at 320, 66 S.Ct. at 160. The Sixth Circuit also rejected a similar argument in *CompuServe* when it wrote that the contacts were "deliberate and repeated even if they yielded little revenue." *CompuServe*, 89 F.3d at 1265.

■ We also conclude that the cause of action arises out of Dot Com's forum-related conduct in this case. The Third Circuit has stated that "a cause of action for trademark infringement occurs where the passing off occurs." *Cottman Transmission Systems Inc. v. Martino*, 36 F.3d 291, 294 (citing *Tefal, S.A. v. Products Int'l Co.*, 529 F.2d 495, 496 n. 1 (3d Cir.1976); *Indianapolis Colts v. Metro. Baltimore Football*, 34 F.3d 410 (7th Cir.1994). In *Tefal*, the maker and distributor of T–Fal cookware sued a partnership of California corporations in the District of New Jersey for trademark infringement. *Tefal*, 529 F.2d at 496. The defendants objected to venue in New Jersey, arguing that the contested trademark accounted for only about five percent of national sales. *Id.* On appeal, the Third Circuit concluded that since substantial sales of the product bearing the allegedly infringing mark took place in New Jersey, the cause of action arose in New Jersey and venue was proper. *Tefal*, 529 F.2d at 496–97.

In *Indianapolis Colts*, also case cited by the Third Circuit in *Cottman*, an Indiana National Football League franchise sued a Maryland Canadian Football League franchise in the Southern District of Indiana, alleging trademark infringement. *Indianapolis Colts*, 34 F.3d at 411. On appeal, the

Seventh Circuit held that personal jurisdiction was appropriate in Indiana because trademark infringement is a tort-like injury and a substantial amount of the injury from the alleged infringement was likely to occur in Indiana. *Id.* at 412.

In the instant case, both a significant amount of the alleged infringement and dilution, and resulting injury have occurred in Pennsylvania. The object of Dot Com's contracts with Pennsylvania residents is the transmission of the messages that Plaintiff claims dilute and infringe upon its trademark. When these messages are transmitted into Pennsylvania and viewed by Pennsylvania residents on their computers, there can be no question that the alleged infringement and dilution occur in Pennsylvania. Moreover, since Manufacturing is a Pennsylvania corporation, a substantial amount of the injury from the alleged wrongdoing is likely to occur in Pennsylvania. Thus, we conclude that the cause of action arises out of Dot Com's forum-related activities under the authority of both *Tefal* and *Indianapolis Colts, supra*.

■ Finally, Dot Com argues that the exercise of jurisdiction would be unreasonable in this case. We disagree. There can be no question that Pennsylvania has a strong interest in adjudicating disputes involving the alleged infringement of trademarks owned by resident corporations. We must also give due regard to the Plaintiff's choice to seek relief in Pennsylvania. *Kulko*, 436 U.S. at 92, 98 S.Ct. at 1696–97. These concerns outweigh the burden created by forcing the Defendant to defend the suit in Pennsylvania, especially when Dot Com consciously chose to conduct business in Pennsylvania, pursuing profits from the actions that are now in question. The Due Process Clause is not a "territorial shield to interstate obligations that have been voluntarily assumed." *Burger King*, 471 U.S. at 474, 105 S.Ct. at 2183.

**B.   Venue Under 28 U.S.C. § 1391**

■ Defendant argues that, under the law of this Circuit, venue is only proper in trademark cases in the judicial district in which "a substantial part of the events or omissions

giving rise to the claim occurred." In support of this proposition, Defendant cites *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291 (3d Cir.1994). We cannot agree.

Venue in this case is governed by 28 U.S.C. § 1391(b), the relevant portion of which provides:

> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which the defendant may be found if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). Subsection (c) further provides that a corporate defendant is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Dot Com is the only defendant in this case and it is a corporation. Thus, under the plain language of 28 U.S.C. § 1391(b)(1), our previous discussion of personal jurisdiction is dispositive of the venue issue. Contrary to Dot Com's contention, *Cottman* does not command a different result.

*Cottman* involved a suit by a Pennsylvania corporation against a former Michigan franchisee and his wholly owned corporation for trademark infringement arising out of the continued use of the plaintiff's trademark after termination of the franchise agreement. The suit was brought in the Eastern District of Pennsylvania. Both defendants were Michigan residents and the corporation did business exclusively in Michigan. In the district court, the plaintiff relied exclusively on 28 U.S.C. § 1391(b)(2) to establish venue. The district court found venue proper, reasoning that a "substantial part of the events or omissions giving rise to the claim occurred" in Pennsylvania. *Cottman Transmission v. Metro Distributing*, 796 F.Supp.

838, 844 (E.D.Pa.1992). Thus, on appeal, the only issue before the Third Circuit was the propriety of venue under § 1391(b)(2). In fact, the Third Circuit expressly stated that it was analyzing the case under § 1391(b)(2). *Cottman*, 36 F.3d at 294. The Third Circuit read the record as only capable of supporting the contention that the defendants attempted to pass off the trademarks at issue in the Eastern District of Michigan. *Id.* at 296. Thus, the Third Circuit reversed, because a "substantial part of the events or omissions giving rise to the claim" had not occurred in the Eastern District of Pennsylvania. *Id.*

The fact that the Third Circuit analyzed *Cottman* under the standard in § 1391(b)(2) does not mean that it applies to every trademark case. In fact, at oral argument, Dot Com conceded that if its reading of *Cottman* were the law, it would effectively render § 1391(b)(1) inapplicable to trademark cases and require the plaintiff to always satisfy § 1391(b)(2) in order to lay venue. If the Third Circuit had intended to create such a radical departure from the plain language of § 1391, it would have said so.

Since venue has been properly laid in this District, we cannot dismiss the action under 28 U.S.C. § 1406(a). *Jumara v. State Farm Inc. Co.*, 55 F.3d 873, 877 (3d Cir.1995). We are also not permitted to compel the Plaintiff to accept a transfer against its wishes. *Carteret v. Shushan*, 919 F.2d 225, 232 (3d Cir. 1990).

## IV. CONCLUSION

We conclude that this Court may appropriately exercise personal jurisdiction over the Defendant and that venue is proper in this judicial district.