ATLANTIC ASSET MANAGEMENT GROUP, INC., Plaintiff,

v.

David CSIRA, Razorchain, LLC, and Donation Exchange, LLC, Defendants.

No. CIV.A.2:04 CV 285.

United States District Court, E.D. Virginia, Norfolk Division.

Aug. 6, 2004.

Robert W. McFarland, Esquire, McGuire Woods LLP, Norfolk, VA, for Plaintiff.

Christian L. Connell, Esquire, Norfolk, VA, for Defendants.

## OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter is before the court on the motion of defendant Donation Exchange, LLC ("DNX") to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). For the reasons stated below, DNX's motion is **GRANTED**.

### I. Factual and Procedural History

Plaintiff Atlantic Asset Management Group, Inc. ("AAMG"), a Virginia Corporation with its principal place of business in Norfolk, Virginia, wholly owns a subsidiary named Donation Remarketing Group ("DRG"). DRG is in the business of liquidating non-cash, tax-deductible charitable donations to non-profit and charitable organizations. The complaint alleges that "AAMG invested significant amounts of time, energy and money into conducting market research, identifying potential clients and developing the DRG business plan" (Compl.¶ 9), and that DRG's business plan is now a trade secret.

On May 6, 2004, AAMG filed a complaint in the above-captioned matter, alleging state-law causes of action for breach of express contract, misappropriation of a trade secret in violation of the Virginia Uniform Trade Secrets Act, conversion, breach of an implied contract, and unjust enrichment, as counts one through five, respectively. Subject matter jurisdiction is based on diversity of citizenship. In the complaint, AAMG alleges that in March, 2003, defendant David Csira ("Csira"), a citizen and resident of California, expressed an interest in acquiring AAMG or investing in DRG. Based on representations about Csira's business and future plans, AAMG discussed with Csira and his company, defendant Razorchain LLC ("Razorchain"), a California limited liability company with its principal place of business in Monarch Beach, California, the basic concept of DRG's business. Csira then allegedly informed AAMG that another group of companies he was connected with, Quantum Value Management LLC and Quantum Value Partners LP (collectively "Quantum"), were interested in purchasing DRG, but needed more information.

As a condition of receiving more information about DRG's business, Csira and Razorchain entered into a written confidentiality and non-disclosure agreement with AAMG. In April, 2003, Csira allegedly visited AAMG in Norfolk, Virginia, to discuss DRG. Discussions between Csira, Razorchain, and AAMG continued into May, 2003, and allegedly resulted in Quantum making a proposal to AAMG for the acquisition of DRG. However, on May 27, 2003, Csira informed AAMG that "for various reasons," Csira, Razorchain, and Quantum would not be investing in DRG. (Compl.¶ 21.) AAMG requested that Csira return all of the materials he had received regarding DRG. On June 3, 2003, Csira allegedly returned some of those materials.

Two months later, in August, 2003, Csira and Razorchain formed DNX, a Delaware limited liability company with its principal place of business in Irvine, California, which, like DRG, entered into the business of assisting non-profit and charitable organizations in the liquidation of non-cash contributions. The only specific factual allegations in the complaint regarding DNX are that, at an unspecified time, "Csira specifically instructed one of Donation Exchange's employees to copy some of DRG's Proprietary Materials for use by Donation Exchange and the employee complied," and that "Donation Exchange is

currently still in possession of DRG's Proprietary Materials." (Compl.¶¶ 26–27.)

On June 25, 2004, Csira and Razorback filed an answer to the complaint, denying liability under all of AAMG's theories and raising a number of affirmative defenses. Also on June 25, 2004, DNX filed a motion to dismiss for lack of personal jurisdiction and a memorandum in support of that motion. Attached to DNX's memorandum in support are the affidavit of John B. Caswell ("Caswell"), vice president of client relations for DNX, and a document which contains an image of each page of DNX's website. According to Caswell's affidavit, DNX was formed in August, 2003; DNX does not have and never had any offices, employees, or representatives in Virginia; DNX neither owns nor leases any property in Virginia; DNX has never targeted advertising at Virginia; DNX is not registered to do business in Virginia, and; DNX has never appointed an agent for service of process in Virginia. The Caswell affidavit states that DNX has never had a customer from Virginia, and that the only revenue it has ever derived from an entity in Virginia is the revenue it received when a donor in Virginia contacted DNX in December, 2003, for the purpose of donating $2,400 worth of jewelry. After selling that jewelry, DNX forwarded $1,707 on to its client, a New Jersey-based non-profit organization.

On July 16, 2004, AAMG filed a memorandum in opposition to DNX's motion to dismiss for lack of personal jurisdiction. On July 21, 2004, DNX filed its reply brief. No hearing is necessary for the resolution of this matter. DNX's motion to dismiss is ripe for review.

## II. Standard of Review

■ When personal jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(2), the burden is on the plaintiff to prove to the court the grounds for jurisdiction by a preponderance of the evidence. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir.2003) (citation omitted). If the court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, however, "the plaintiff need only make a prima facie showing of personal jurisdiction." *Id.* In other words, "the court must take all disputed facts and reasonable inferences in favor of the plaintiff," when deciding the motion to dismiss. *Id.*

■ Under Rule 4(k)(1)(A), a federal court may exercise *in personam* jurisdiction over a defendant in the manner provided by state law. Fed.R.Civ.P. 4(k)(1)(A). Of course, any imposition of jurisdiction must also be consistent with constitutional due process requirements. *Carefirst*, 334 F.3d at 396. Thus, in order to determine whether this court may exercise personal jurisdiction over out-of-state defendant DNX, it must evaluate: (1) whether jurisdiction is proper under the relevant laws of the Commonwealth of Virginia, and (2) whether requiring DNX to travel to this court in order to defend itself against AAMG's lawsuit would meet the due process requirements of the Fourteenth Amendment. *See id.* The applicable long-arm statute in this case, Virginia Code § 8.01–328.1(A), has been interpreted to extend to the limits of constitutional due process. *See Danville Plywood Corp. v. Plain & Fancy Kitchens*, 218 Va. 533, 534–35, 238 S.E.2d 800 (1977) ("The purpose of our 'long arm statute' is to assert jurisdiction, to the extent permissible under the Due Process Clause of the Constitution of the United States, over nonresidents who engage in some purposeful activity in Virginia."). Thus, the court need only engage in constitutional due process analysis.

The exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has sufficient "minimum contacts" with the forum state, such that requiring the defendant to defend its interests in the forum state "does not offend traditional notions of fair play and substantial justice." *Carefirst*, 334 F.3d at 397 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Under *International Shoe* and its progeny, a nonresident defendant can be subject to either "specific" or "general" *in personam* jurisdiction in the forum state, depending on the nature of the lawsuit and the extent of defendant's contacts.

In determining whether specific jurisdiction exists, we consider (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'

*Id.* (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–712 (4th Cir.2002)). In order for a nonresident defendant to be subject to general personal jurisdiction, it must have significant contacts with the forum state that are "continuous and systematic." *Id.* In the instant case, there is no suggestion that DNX's contacts with Virginia are continuous and systematic. Therefore, the court will analyze only whether it has specific *in personam* jurisdiction over DNX.

### III. Analysis

As an initial matter, AAMG makes much in its opposition to DNX's motion to dismiss of Csira's alleged travel to and conduct in Virginia in March, April, and May of 2003. Defendant DNX was not formed until August, 2003. Thus, there is no basis on which to impute any of Csira's

conduct to DNX; at the time he allegedly was present in Virginia, Csira could not have been an owner, officer, manager, director, or employee of DNX, because DNX did not exist. Any allegations about Csira's or Razorback's conduct which pre-date the formation of DNX are unrelated to the question of whether this court can constitutionally exercise personal jurisdiction over DNX. Instead, the contacts relevant to the court's analysis of whether personal jurisdiction over DNX would comport with due process are: (1) its website, (2) the harmful effect in Virginia of DNX's alleged conduct, and (3) the donation received from a Virginia donor which was liquidated and the proceeds forwarded on to a New Jersey non-profit organization.

In the Fourth Circuit, whether a nonresident defendant's website justifies the assertion of personal jurisdiction over that defendant depends upon the "level of interactivity and [the] commercial nature of the exchange of information that occurs on the Web site [sic]." *ALS Scan*, 293 F.3d at 714 (citations omitted). A "sliding scale" test is applied, in which at one end of the scale "are situations where a defendant clearly does business over the Internet," by entering into contracts on the defendant's website with entities located in the forum state. *Id.* at 713 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997)). Under such circumstances, the assertion of jurisdiction over the nonresident defendant is plainly constitutional. *Id.* At the other end of the scale, where the assumption of jurisdiction clearly would not be constitutional, is a defendant who operates a "passive" website "that does little more than make information available to those who are interested in it." *Id.* In between these two extremes are defendants that operate "interactive Web sites where a user can exchange information with the host com-

puter. In these cases the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.*

DNX's Internet activity is almost entirely passive and cannot form the basis for an assertion of personal jurisdiction over the company. The vast majority of the website is devoted solely to disseminating information about the company and the services it provides. On one page, an interactive form is available for users to submit "contact" information to DNX, for the purpose of receiving additional information about the company's services via email. But an individual interested in using DNX's services cannot contract to do so over the company's website. Further, the website is not geographically targeted in any way. DNX is marketing its services nationally on the website, with no mention of or focus on any particular locality. Thus, DNX's website does not justify the assertion of personal jurisdiction over the company on AAMG's claims.

■ Nor does the fact that plaintiff AAMG is located in Norfolk, Virginia, and therefore that the harmful effect of DNX's alleged conduct will be felt in Virginia provide a valid basis for the assertion of personal jurisdiction in the absence of additional, purposefully directed activity. "Although the place that the plaintiff feels the alleged injury is plainly relevant to the inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld." *ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 626 (4th Cir. 1997); *see also Young v. New Haven Advocate,* 315 F.3d 256, 262–63 (4th Cir.2002) (holding that the posting of allegedly libelous articles about a Virginian on a Connecticut newspaper's website did not warrant the imposition of personal jurisdiction in Virginia over the newspaper). Instead,

the defendant's activities which give rise to the cause of action must have been "purposely directed" at the forum state in some way other than simply injuring a plaintiff located there. *See Young,* 315 F.3d at 263 (stating that "[s]omething more" than posting libelous statements about a Virginian on a website available in Virginia is needed to show that defendant's activity was purposefully directed at Virginia).

■ Thus, in this case, the issue becomes whether AAMG is able to make out a prima facie case that DNX did "something more" to purposefully direct its alleged illegal and tortious activities into Virginia. In this regard, AAMG points to DNX's acceptance of $2,400 worth of jewelry from a donor in Virginia in December, 2003. According to Caswell's affidavit, however, the content of which AAMG does not contest, the jewelry donor contacted DNX. (Caswell Aff. ¶ 10.) Even when coupled with the harmful effects in Virginia of DNX's alleged conduct, the one-time unilateral act of a single third-party contacting DNX, even if that contact was facilitated by DNX's website or other national advertising, is simply "too attenuated and insubstantial to provide a constitutionally sufficient basis" for the exercise of personal jurisdiction over DNX. *See ESAB,* 126 F.3d at 626; *see also Calder v. Jones,* 465 U.S. 783, 789–90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (holding that personal jurisdiction in California was appropriate over nonresident journalist where harmful effects of allegedly defamatory article would be exclusively felt in California and California was the state of newspaper's greatest circulation).

Based on the record before the court and making all reasonable inferences in favor of AAMG, AAMG's lawsuit simply does not arise to any appreciable extent from any activities which DNX purposefully directed toward Virginia. In other

words, AAMG has not made a prima facie showing that personal jurisdiction over defendant DNX would comport with constitutional due process requirements.

### IV. Conclusion

For the reasons stated, defendant DNX's motion to dismiss for lack of personal jurisdiction is **GRANTED**; defendant Donation Exchange, LLC is **DISMISSED** from the above-captioned civil action. The Clerk is **DIRECTED** to mail a copy of this Opinion and Order to counsel for the parties.

**IT IS SO ORDERED.**