Adams v. Citizens Auto Fin., Inc., No. 466-6-08 Rdcv (Cohen, J., Aug. 18, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

**SUPERIOR COURT**                                    **CIVIL DIVISION**
**Rutland Unit**                                      **Docket No. 466-6-08 Rdcv**


**MELISSA KATE ADAMS,**
            **Plaintiff**

      **v.**

**CITIZENS AUTO FINANCE, INC.,**
**RBS CITIZENS, N.A., and**
**MARINA DODGE, INC.,**
            **Defendants**


## DECISION ON DEFENDANT MARINA DODGE INC.'S RENEWED MOTION TO DISMISS,FILED MAY 4, 2010

Plaintiff Melissa Adams alleges that she was unfairly and deceptively induced into buying an automobile by the defendant Marina Dodge, Inc. The sale occurred near Rochester, New York. Marina Dodge now moves to dismiss for lack of personal jurisdiction under V.R.C.P. 12(b)(2). The plaintiff is represented by Peter H. Banse, Esq. The defendant Marina Dodge, Inc. is represented by Richard R. Hennessey, Esq.

## BACKGROUND

In 2004, Melissa Adams was a student at the National Technical Institute for the Deaf in Rochester, New York. While Ms. Adams went to school in Rochester, New York, her permanent residence was in Fair Haven, Vermont.

In October 2004, while Ms. Adams was in school in Rochester, Jacob Canter, a fellow hearing-impaired student, asked her if she would drive him to an automobile dealership known as Marina Dodge. The dealership was located at [address redacted], in Webster, New York. Mr. Canter had seen an advertisement from Marina Dodge offering

"$0 down 0% APR financing, everyone approved." Mr. Canter was interested in buying an automobile under those terms. However, he was afraid to drive himself to the dealership because he was unfamiliar with the city. Ms. Adams agreed to drive Mr. Canter there.

At Marina Dodge, Ms. Adams waited while Mr. Canter looked at cars with a salesperson. After finding a suitable vehicle, a used 2001 Dodge Durango truck, Mr. Canter and the salesperson discussed the financial details of the purchase. The salesperson took Mr. Canter's financial and credit information and processed it several times. However, the salesperson said that the bank would not approve financing in the necessary amount. The salesperson told Mr. Canter that he would have to find someone with good credit to vouch for him. That person would have to say that he was responsible and would make the payments.

Mr. Canter told the salesperson that Ms. Adams may be willing to help him. The salesperson told them that he would first have to check Ms. Adams's credit. After checking Ms. Adams's credit, the salesperson returned and said that they could help and could do a deal on a car that Mr. Canter wanted. Ms. Adams told the salesperson that she and Mr. Canter were only fellow students and had known each other less than three weeks. The salesperson told them not to tell anyone that information.

The salesperson and Mr. Canter then discussed the terms of the purchase. The salesperson proposed that Mr. Canter would trade in his used vehicle, pay a $500 cash deposit, and then make payments of $487.55 a month for six years. The interest rate was 9.15%. Mr. Canter became upset and indicated that he did not understand those terms because the advertising had stated "$0 down and 0% APR." The salesperson told Mr.

Canter that the dealership had worked hard to find a bank to the take the loan, but that was the best deal he could get. The salesperson also told Mr. Canter that agreeing to these terms would help him establish good credit.

When Mr. Canter told the salesperson that he would accept those terms, the salesperson responded that Ms. Adams would have to sign the forms instead of Mr. Canter. The salesperson informed them that Mr. Canter's credit had been turned down. He assured Ms. Adams that the truck was not going to be Ms. Adams's responsibility and that she was there only to help Mr. Canter. He further assured Ms. Adams that Mr. Canter would be responsible for payments and that her credit would look better than ever after the purchase. The salesperson said that Mr. Canter would be signing a statement to that effect as part of the paperwork.

Ms. Adams signed the papers using her name, but Mr. Canter's address, trade-in, and purchase information. The salesperson then told them that the purchase could not be completed until the Dodge Durango was insured.

Ms. Adams and Mr. Canter came back the next day and the salesperson told them that he had "set up an insurance company that would cover both Jake [Mr. Canter]" and Ms. Adams. Ms. Adams protested that she did not want to be covered under an insurance policy because she would not be driving the truck. But, the salesperson assured her it was so that the bank could help out Mr. Canter.

The salesperson then took them to an insurance company office. An insurance company employee asked Ms. Adams and Mr. Canter if they were married. They responded no, that they had only met recently. The insurance company employee advised them not to say that because the company would only issue a policy if Ms. Adams and

3

Mr. Canter were married. However, Ms. Adams and Mr. Canter did not want to say they were married. The Marina Dodge salesperson then took the two outside and advised them that they should sign the forms the way the insurance company wanted and then change the insurance afterwards.

Ms. Adams then purchased the used 2001 Dodge Durango and a long-term service contract. By signing the purchase documents, Ms. Adams borrowed an amount of $26,839.01 from Citizens Auto Finance, Inc. Ms. Adams immediately began receiving monthly billing statements from Citizens Bank. She contacted and wrote to Citizens Bank and Marina Dodge, telling them that she did not have the vehicle and that she believed a fraud had been perpetrated upon her. Citizen's Bank still demands a monthly payment of $484.78. Ms. Adams has continued to pay this amount under protest.

On June 23, 2008, Ms. Adams brought suit in Vermont Superior Court, Civil Division, Rutland Unit, against Citizens Auto Finance, Inc. and RBS Citizens N.A. About one year later, on July 13, 2009, Ms. Adams moved to amend her complaint to add Marina Dodge, Inc. The Court granted the motion and Marina Dodge was added as a defendant on July 21, 2009. In her complaint Ms. Adams alleges that she was deceptively induced into purchasing the vehicle by unfair and deceptive acts and practices by Marina Dodge.

On November 10, 2009, Marina Dodge filed a motion to dismiss for lack of personal jurisdiction. Marina Dodge argued that it did not have "minimum contacts" with Vermont; thus, Vermont's long-arm statute did not provide personal jurisdiction over it. A motion hearing was held on January 21, 2010, at which the Court ruled that there were insufficient facts for the Court to determine whether minimum contacts with Vermont

4

existed. The Court scheduled a three-month discovery schedule, limited to the issue of minimum contacts. On May 4, 2010, Marina Dodge renewed its motion to dismiss for lack of personal jurisdiction.

Marina Dodge, Inc. is a corporation under the laws of the State of New York, first incorporated in 1989. Its principal place of business is in Webster, New York, located near Rochester, New York. Webster, New York is located about 250 miles away from the Vermont and New York border.

From the submitted evidence, it appears that Marina Dodge has only one dealership, which has about 50 employees. Marina Dodge advertises in print and has a website. Its advertisements target the Rochester, New York area. There is no evidence that it has ever advertised in Vermont or targeted Vermont residents. There is no evidence that it has ever shipped automobiles to Vermont.

Marina Dodge's website went online in the early 1990s. In 2004, the website was hosted by the Chrysler Corporation. The website did not allow users to ask questions or send e-mails to Marina Dodge. Nor did it allow users to search automobile inventory or set up financing. In 2004, the website did not have a "Carfinder" option to it. From the evidence, the website was "static," almost like an advertisement on the internet. There was no ability for users to interact with Marina Dodge on the website. Marina Dodge did have a nationwide toll-free telephone number.

Marina Dodge requires customers who enter into purchase agreements to provide their legal address and residence. In the case of Ms. Adams, she listed her New York address and telephone number on all purchase documents. She also listed her New York address on all finance documents. Marina Dodge made a copy of Ms. Adams's Vermont

5

driver's license. According to Marina Dodge, up to 2004, Ms. Adams was the only person with a Vermont driver's license that it had sold a vehicle to.

Furthermore, Marina Dodge maintains a customer list for marketing purposes. Ms. Adams is on the marketing list and her New York address is listed. There is no evidence that any person with a Vermont address is listed on the marketing list.

## DISCUSSION

When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999); V.R.C.P. 12, Reporter's Notes (Vermont Rule 12 is based on Federal Rule 12 with minor modifications).

Under Vermont's long arm statute, "a foreign corporation is 'deemed to be doing business in Vermont,' and thus to have appointed the secretary of state as its agent for service-of-process purposes, if the corporation has had 'contact with the state,' has conducted 'activity in the state' or there has been 'contact or activity imputable to it . . . sufficient to support a Vermont personal judgment against it . . . arising or growing out of that contact or activity.'" *Schwartz v. Frankenhoff*, 169 Vt. 287, 292 (1999) (citing 12 V.S.A. § 855).

This section expresses a policy to assert jurisdiction over individual defendants to the full extent permitted by the Due Process Clause of the Fourteenth Amendment. *Schwartz v. Frankenhoff*, 169 Vt. at 292 (citation omitted). Thus, the jurisdictional issue must be resolved under federal constitutional law, as defined in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny. *Northern Aircraft, Inc. v. Reed*, 153

6

Vt. at 41 (citing *Chittenden Trust Co. v. Bianchi*, 148 Vt. 140, 141 (1987)).

The Due Process Clause limits the power of a state court to render judgments against nonresident defendants. *Reed*, 153 Vt. at 41 (citing *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 108 (1987)). In order to invoke personal jurisdiction over a defendant, the defendant must have "certain minimum contacts with the forum state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Reed*, 153 Vt. at 41 (quoting *International Shoe Co.*, 326 U.S. at 316)).

The critical consideration is whether a defendant's conduct and connection with the forum State are such that it should reasonably anticipate being haled into court there. *Reed*, 153 Vt. at 41 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). This reasonableness requirement is met when a defendant purposefully directs its activities towards residents of the forum State and the litigation that results arises from those activities. *Reed*, 153 Vt. at 41 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "Under this 'purposeful availment' requirement, a defendant cannot be summoned into a jurisdiction merely as a result of fortuitous, attenuated or random contacts." *Reed*, 153 Vt. at 41-42.

Here, the defendant Marina Dodge appears to own one dealership and much, if not all, of its business comes from the Rochester, New York area, which is over 250 miles away from Vermont. Marina Dodge did not advertise in Vermont by print, radio, or television advertisements, nor did it target Vermont customers by other means, such as direct mailings from its customer list. Furthermore, there is no evidence that Marina Dodge has ever shipped automobiles to Vermont. Finally, Marina Dodge asserts, and the

plaintiff has provided no contradictory evidence, that the plaintiff is the only person with a Vermont driver's license to ever buy an automobile from the Marina Dodge.

The plaintiff argues that Marina Dodge's website and nationwide toll-free telephone number establish minimum contacts with Vermont. The Court does not agree.

In analyzing personal jurisdiction based upon the operation of an internet web site, many courts have turned to the standards set out more than thirteen years ago by a judge of the Western District of Pennsylvania in *Zippo Manufacturing Company v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997). See *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 250 (2d Cir. 2007) (citing multiple cases adopting *Zippo* standards). The *Zippo* court recognized that "the likelihood that personal jurisdiction can be constitutionally exercised [based on Internet use] is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." 952 F.Supp. at 1124. The court set forth a sliding scale of interactivity:

> [a]t one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id*. (citations omitted).

8

Defendant Marina Dodge's website was essentially an advertisement that did "little more than make information available to those who [were] interested . . . ." See *Zippo*, 952 F.Supp. at 1124. Customers were not able to interact with Marina Dodge through the website, either by e-mailing the dealership, chatting online, or submitting a comment. There was also no inventory search function and no way for a customer to set up financing over the internet. In sum, Marina Dodge's website in 2004 can best be described as "passive." See *Id*.

Likewise, defendant Marina Dodge's maintenance of a nationwide toll free telephone number does not support a finding of minimum contacts. The phone number was not advertised in Vermont and the plaintiff has provided no evidence as to how many Vermont residents ever used it.

The plaintiff also argues that the defendant should have foreseen being haled into a Vermont court because the plaintiff's driver's license and Equifax credit check documents listed a Vermont address. However, the unilateral activity of one who claims some relationship with a nonresident defendant cannot satisfy the requirement of minimum contact with the forum State. *Reed*, 153 Vt. at 41 (citing *Hanson*, 357 U.S. at 253). Furthermore, "the foreseeability of being summoned into a foreign jurisdiction, while not wholly irrelevant, has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *Reed*, 153 Vt. at 41 (citing *World-Wide Volkswagen Corp.*, 444 U.S. at 295-297). Here, no contacts regarding the purchase were made in Vermont. The plaintiff did not travel from Vermont to purchase the automobile (she was in school in Rochester, New York). And, the purchased automobile has never entered the State of Vermont because the plaintiff is not in possession of it. The only

9

connection between defendant Marina Dodge and the State of Vermont is that the plaintiff was a Vermont resident at the time of the purchase. "[A] defendant cannot be summoned into a jurisdiction merely as a result of fortuitous, attenuated or random contacts." *Reed*, 153 Vt. at 41-42.

Defendant Marina Dodge's conduct and connection with the State of Vermont were not such that it should have reasonably anticipated being haled into court here. See *Id*. at 41 (citing *World-Wide Volkswagen Corp*, 444 U.S. at 297)). The reasonableness requirement is not met because the defendant did not purposefully direct its activities towards residents of Vermont, nor did the litigation results arise from those activities. See *Reed*, 153 Vt. at 41 (citing *Rudzewicz*, 471 U.S. at 472). The plaintiff has not established that the court has jurisdiction over the defendant Marina Dodge, Inc.

## ORDER

Defendant Marina Dodge Inc.'s Renewed Motion to Dismiss for Lack of Personal Jurisdiction, filed May 4, 2010, is GRANTED.

Dated at Rutland, Vermont this _____ day of _____, 2010.

_____
Hon. William Cohen
Superior Court Judge

10