| iSULLIVAN, Judge.
The sole issue presented by this case is whether constitutional due process requirements allow Louisiana to exercise personal jurisdiction over a Florida software company which sold virus-infected computer software to Louisiana customers. The trial court ruled that the defendant, CSS, Incorporated (CSS), did not have sufficient contacts with this state to justify the exercise of personal jurisdiction. For the following reasons, we affirm the trial court’s judgment sustaining CSS’s declinatory exception of lack of personal jurisdiction.
FACTS
Plaintiffs, Coastal Credit Company, Incorporated; Acadiana Acceptance, Incorporated; and Crowley Loan and Mortgage, Incorporated, purchased software from CSS in 1993. The software was designed to allow credit companies to access credit bureau reports on their potential customers. Unbeknownst to plaintiffs, the software |2was infected with the “Michelangelo” virus, which damaged their computer systems on March 6, 1995.
On August 16, 1995, plaintiffs filed this redhibition suit against CSS seeking rescission of the sale, damages, and attorney fees. In response, CSS, a Florida corporation, filed a declinatory exception of lack of personal jurisdiction. CSS maintained it lacked sufficient minimum contacts with Louisiana to justify plaintiffs’ assertion of personal jurisdiction.
Plaintiffs filed a memorandum in opposition and attached six affidavits. Plaintiffs asserted the substance of these affidavits established that CSS had sufficient minimum contacts with Louisiana. The first affiant, Don Griggs, declared that he owns Griggs Softworks, Incorporated in Baton Rouge, Louisiana. He stated that, upon inquiry by some of his Louisiana customers as to the availability of software to allow communication access to credit bureaus, he contacted CSS to discuss his Louisiana customers’ po *466 tential use of such software owned and distributed by CSS. Griggs declared further that CSS provided him with software information and price schedules for distribution to his customers. He stated that eight of his Louisiana customers use the CSS software and that CSS has provided technical support by telephone for software problems on an ongoing basis. He did not specify to whom the technical support services were provided.
The five other affidavits, which are substantively identical, were executed by Henry Dugan, manager of Crowley Loan and Mortgage, Incorporated; Debi Harry, manager of Coastal Credit Company, Incorporated; James Dunn, manager of Houma Mortgage and Loan, Incorporated; E.J. Ardoin, manager of Acadiana Acceptance, Incorporated; and Leo Meaux, manager of Mutual Credit Company. Each affiant declared:
RThat his/her company purchased in 1993 certain credit reports software directly from CSS, Inc.;
That CSS, Inc., mailed the said software directly to the offices of Affiant here in Louisiana;
That Affiant forwarded to CSS, Inc. a check drawn on a Louisiana bank as payment for the said software.
The trial court conducted a hearing on CSS’s exception on December 13, 1995. The appellate-record transcript of the hearing does not include the oral argument of counsel but instead begins with the ruling of the trial court. In finding in favor of CSS, the trial court reasoned as follows:
What pex*suades me is the factual situation in the cases cited to me. I find that the facts of this case do not rise anywhere near the facts of those where jurisdiction has been found.
In the Touche case, Jones/Touche, there were interesting dissents, but really only one of the dissents has any relevance to this case. I think that Judge Plotkin would find jurisdiction here, because all he thinks is needed is one direct sale and the existence of other sales. He feels that’s enough. But he’s alone and he’s the dissent.
Another dissent, even though he says no jurisdiction, bases it on national adds [sic] and an ongoing relationship. That, to me, is the biggest distinction between the cases cited by Mr. Spears [defense counsel].
Actually, Mr. Lopresto [plaintiffs’ counsel], you cited cases in your support that factually don’t really support you, because the major difference in your cases is this ongoing relationship. In the software situation there was [sic] updates and contact by phone, and the facts of the other cases were an ongoing service relationship between the seller and the buyer, and we didn’t have that here.
The cases interpreting that have not found that just the fact that it ended up here is enough that the person, when selling it, anticipated the benefits of Louisiana law.
But in the Touche case, there was national advertising and there was ongoing relationship between one and the other, which I think distinguishes it clearly from this.
|4On February 5, 1996, the trial court signed a judgment dismissing plaintiffs’ claims against CSS for want of personal jurisdiction. From this judgment, plaintiffs appeal.
LAW
The sole inquiry is whether Louisiana’s assertion of jurisdiction over the nonresident corporation complies with constitutional due process. La.R.S. 13:3201(B); Fox v. Board of Supervisors of Louisiana State Univ. and Agric. and Mechanical College, 576 So.2d 978 (La.1991). Constitutional due process requires minimum contacts with the forum state such that the maintenance of suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).
In deReyes v. Marine Management and Consulting, Ltd., 586 So.2d 103 (La.1991), the Supreme Court of Louisiana recognized the distinction between specific and general jur *467 isdiction. The court explained that specific jurisdiction involves the exercise of personal jurisdiction in a suit arising from or related to a defendant’s contacts with the forum. General jurisdiction involves the exercise of personal jurisdiction in a suit which does not arise from or is not related to defendant’s contacts with the forum. In either situation, “the two-part minimum contacts/fairness analysis” applies to the assertion of specific as well as general jurisdiction. Id. at 109.
Because plaintiffs assert this suit arises out of the direct sale of a product from CSS to Louisiana purchasers, this case is one in which the state seeks to assert specific jurisdiction. The two-part test, developed primarily in conjunction with specific jurisdiction cases by the United States Supreme Court, places the initial burden upon the party claiming jurisdiction is proper to show the existence of minimum contacts with the forum state. Once the proponent of jurisdiction meets this burden, a presumption arises that jurisdiction is reasonable. The burden shifts to the opponent |sto prove the exercise of jurisdiction “would be so unreasonable in light of traditional notions of fair play and substantial justice as to overcome the presumption of reasonableness.... ” Id. at 107.
In deReyes, 586 So.2d at 106, the supreme court discussed the proponent of jurisdiction’s initial burden as follows:
Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, the requirement of meaningful contacts is satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities. By requiting that a defendant must have purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws, the requirement ensures that he will not be haled into a jurisdiction solely as a result of a random, fortuitous or attenuated contact, or by the the [sic] unilateral activity of another party or a third person. Thus, where the defendant deliberately engaged in significant activities within a state, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum’s laws it is presumptively not'unreasonable to require the defendant to submit to the burdens of litigation in that forum as well.
(Citations omitted.)
Additionally, in Bordelon, Hamlin, Theriot & Hardy v. Burlington Broadcasting, Ltd., 94-1839 (La.App. 4 Cir. 3/16/95); 652 So.2d 1082, the fourth circuit discussed the fact that the lack of defendant’s physical presence in the forum does not necessarily result in a determination against the exercise of personal jurisdiction. The court reasoned:
Jurisdiction may not be avoided merely because the defendant did not physically enter the forum state. “[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across the state lines, thus obviating the need for physical presence within a State in which business is conducted.” Fine v. Rubin, 617 So.2d 86, 87-88 (La.App. 4th Cir.1993), quoting Burger King Corp., 471 U.S. [462] at 476, 105 S.Ct. [2174] at 2184, 85 L.Ed.2d 528 [ (1985) ]. Modern transportation and communications have made it much less burdensome for a party to defend himself in a state where he engages in economic activity. McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).
^Parties who enter into interstate contracts and “reach out beyond one state and create continuing relationships and obligations with citizens of another state” are subject to jurisdiction in the other state. Burger King Corp., 471 U.S. at 473, 105 S.Ct. at 2182, quoting Travelers Health Association v. Virginia, 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950).
Id. at 1084-85.
In the case sub judice, the trial court determined that CSS did not purposefully reach out beyond Florida and establish an ongoing, continuing relationship with the *468 plaintiffs and other citizens of Louisiana. The trial court found, therefore, that plaintiffs failed to carry their initial burden of proving the existence of minimum contacts.
We agree with the trial court’s determination. The proof presented reveals that CSS made no affirmative effort to solicit business in Louisiana and create continuing relationships and obligations with Louisiana citizens. CSS is not registered to do business here, and it has no offices or employees here. Plaintiffs did not present any proof that CSS ever advertised here or, for that matter, in any national trade magazines or publications. After receiving an unsolicited telephone call from Griggs, CSS agreed to sell the software directly to credit companies in Louisiana. These sales represent CSS’s only contact with Louisiana. It is clear that CSS conducted business from Florida with Louisiana customers on a random or ad hoc basis. CSS did not deliberately engage in significant ac: tivities within Louisiana.
We conclude that plaintiffs failed to prove that CSS purposefully availed itself of the benefits and laws of Louisiana so as to establish minimum contacts necessary to satisfy due process requirements. Therefore, the assertion of jurisdiction in this case is not constitutionally proper.
LDECREE
For these reasons, we affirm the trial court judgment which dismissed plaintiffs’ claims against defendant, CSS, Incorporated. All costs of this appeal are assessed to plaintiffs.
AFFIRMED.