939 So.2d 429 (2006)
QUALITY DESIGN AND CONSTRUCTION, INC.
v.
TUFF COAT MANUFACTURING, INC.
No. 2005 CA 1712.
Court of Appeal of Louisiana, First Circuit.
July 12, 2006.
Rehearing Denied September 19, 2006.
*431 Joseph C. Wiley, Gonzales, for Plaintiff/Appellant Quality Design and Construction, Inc.
Matthew W. Pryor, Prairieville, for Defendant/Appellee Tuff Coat Manufacturing, Inc.
Before: WHIPPLE, McCLENDON, and WELCH, JJ.
McCLENDON, J.
This appeal presents the res nova issue of the exercise of personal jurisdiction by Louisiana over a nonresident defendant based on that defendant's contact with Louisiana through its Internet website.

FACTS
Plaintiff, Quality Design and Construction, Inc., (Quality Design), a Louisiana corporation, served as general contractor for the construction of Jambalaya Park, a public works project in and for the City of Gonzales. The park contained a children's "sprayground" or water park. To cover the concrete surfaces of the sprayground, Quality Design purchased Ultra Tuff, a non-slip, abrasion-resistant, polyurethane coating manufactured by Tuff Coat Manufacturing, Inc., (Tuff Coat), a Colorado corporation. After installation, pigment leached from the Ultra Tuff coating. The leached pigment allegedly damaged the water purification system and required repair and recoating of the covered surfaces.
Quality Design filed suit against Tuff Coat in the 23rd Judicial District Court in Ascension Parish. In response, Tuff Coat filed a declinatory exception raising the objection of lack of personal jurisdiction. Tuff Coat maintained it did not have sufficient minimum contacts with the State of Louisiana such that Louisiana could exercise personal jurisdiction over Tuff Coat. In support, Tuff Coat offered the affidavit of Bill Duffle, President of Tuff Coat. At the hearing on Tuff Coat's exception, Quality Design offered Tuff Coat's responses to interrogatories and copies of pages from Tuff Coat's Internet website. After the *432 hearing, the district court sustained Tuff Coat's exception and dismissed Quality Design's petition, finding Tuff Coat lacked sufficient minimum contacts with Louisiana. Quality Design appeals.

LAW AND DISCUSSION
Appellate courts conduct a de novo review of the legal issue of personal jurisdiction over a nonresident by a Louisiana court. Frederic v. Zodiac Development, XXXX-XXXX, p. 4 (La.App. 1 Cir. 2/14/03), 839 So.2d 448, 452. However, the district court's factual findings underlying the decision are reviewed under the manifest error standard of review. Griffith v. French, 97-2635, p. 3 (La.App. 1 Cir. 12/28/98), 723 So.2d 1140, 1142, writ denied, 99-0220 (La.3/19/99), 740 So.2d 116.
In determining whether there is personal jurisdiction, we look to the long-arm statute of Louisiana, which provides that "a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States." LSA-R.S. 13:3201(B). The limits of the Louisiana long-arm statute and of constitutional due process are coextensive; the sole inquiry into jurisdiction over a nonresident is whether it comports with constitutional due process requirements. Alonso v. Line, 2002-2644, p. 6 (La.5/20/03), 846 So.2d 745, 750, cert. denied, 540 U.S. 967, 124 S.Ct. 434, 157 L.Ed.2d 311 (2003).
To comport with constitutional due process requirements, the nonresident defendant must have purposefully established certain "minimum contacts" with the forum state such that he could reasonably anticipate being haled into court there, and the exercise of personal jurisdiction must be such that it "does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). A court's exercise of personal jurisdiction may be "general" or "specific." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 n. 15, 105 S.Ct. 2174, 2182 n. 15, 85 L.Ed.2d 528 (1985); Griffith, 97-2635 at p. 3, 723 So.2d at 1143. A court may exercise general jurisdiction over a defendant when the defendant has engaged in continuous and systematic contacts with the forum state, but the contacts are not necessarily related to the lawsuit. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16, 104 S.Ct. 1868, 1872-73, 80 L.Ed.2d 404 (1984). A court may exercise specific jurisdiction over a defendant when the alleged cause of action arises out of, or is related to, the defendant's purposeful contacts with the forum state. Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 414 n. 8, 104 S.Ct. at 1872 n. 8.
Minimum contacts are established when the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum [s]tate." Burger King Corp., 471 U.S. at 475, 105 S.Ct. at 2183 (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40, 2 L.Ed.2d 1283 (1958)). The "purposeful availment" requirement for the exercise of specific jurisdiction over a nonresident defendant ensures that it will not be haled into a jurisdiction solely as a result of a random, fortuitous, or attenuated contact, or by the unilateral activity of another party or a third person. Burger King Corp., 471 U.S. at 475, 105 S.Ct. at 2183; de Reyes v. Marine Management and Consulting, Ltd., 586 So.2d 103, 106 (La.1991). However, such contacts may be effected by mail and electronic communications, as well as physical presence. Spomer v. Aggressor International, Inc., XXXX-XXXX, *433 p. 5 (La.App. 1 Cir. 9/28/01), 807 So.2d 267, 272, writ denied, 2001-2886 (La.1/25/02), 807 So.2d 250. To determine whether minimum contacts exist, a court must engage in a "factual determination of the relationship among the forum, the defendant, and the litigation." A & L Energy, Inc. v. Pegasus Group, XXXX-XXXX, p. 6 (La.6/29/01), 791 So.2d 1266, 1271-72, cert. denied, 534 U.S. 1022, 122 S.Ct. 550, 151 L.Ed.2d 426 (2001), (quoting Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977)).
In accord with these precepts, there has developed a two-part test in personal jurisdiction analysis. First, it must be shown that the defendant has established minimum contacts with the forum state; i.e., it has purposefully directed its activities at the residents of the forum state. The minimum contacts prong is satisfied by a single act or actions by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." Burger King Corp., 471 U.S. at 475, 105 S.Ct. at 2183 (quoting Hanson, 357 U.S. at 253, 78 S.Ct. at 1239-40). The nonresident's purposeful availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); Ruckstuhl v. Owens Corning Fiberglas Corp., 98-1126, p. 6 (La.4/13/99), 731 So.2d 881, 885, cert. denied, 528 U.S. 1019, 120 S.Ct. 526, 145 L.Ed.2d 407 (1999). Once that is shown, "a presumption arises that jurisdiction is reasonable and the burden of proof and persuasion shifts to the defendant opposing jurisdiction to present `a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" de Reyes, 586 So.2d at 106, (quoting Burger King Corp., 471 U.S. at 477, 105 S.Ct. at 2185); Peters v. Alpharetta Spa, L.L.C., XXXX-XXXX, p. 5 (La.App. 1 Cir. 5/6/05), 915 So.2d 908, 911.
Tuff Coat excepts to the exercise of personal jurisdiction over it by a Louisiana court. Bill Duffle, President of Tuff Coat, stated in his affidavit that Tuff Coat is a Colorado-based corporation, not registered or licensed to do business in Louisiana. According to Duffle, Tuff Coat does not maintain an office, bank account, telephone number, or post office box in Louisiana, nor does Tuff Coat directly advertise, solicit business, or employ anyone in Louisiana.
Tuff Coat does maintain an informational website on the World Wide Web that is accessible to Internet web users all over the world. Web users may not purchase Tuff Coat products via the website; however, it does give contact information that includes a physical mailing address and a toll-free number. Therefore, interested parties are provided information whereby they can mail or telephone the Colorado corporation for the purpose of placing an order. Once Tuff Coat fills an order, it ships the product to the customer "FOB Montrose, Colorado," thereby transferring ownership of the product to the customer upon its departure from the Montrose loading dock, as though the customer personally came to Colorado to purchase the product.[1]
Tuff Coat's website does allow customers of its Ultra Tuff Marine products to add their names to a list of customers on *434 one of its web pages. However, for customers to add their names to the list, they must initiate contact with Tuff Coat. Among the listed customers is "Bollinger Shipyards, LA[.]" No other listed customers are specifically designated to be from Louisiana.
According to interrogatory responses submitted into evidence, Tuff Coat never sold directly to Bollinger Shipyards, although it was ultimately the end-user of Tuff Coat's product. Tuff Coat has made sales to four other entities providing Louisiana addresses, in addition to Quality Design. However, neither Quality Design nor any of those entities were listed on Tuff Coat's website. Further, in each of those instances, the Louisiana customer contacted Tuff Coat to make a purchase; no negotiations took place; each sale was a one-time transaction resulting in no repeat transactions; and all products were shipped "FOB Montrose, Colorado."
It is Quality Design's contention that the district court may assert jurisdiction over Tuff Coat based on Tuff Coat's Internet website. In support, Quality Design cites Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119 (W.D.Pa. 1997). Zippo used a "sliding scale" to measure an Internet site's connection to a forum state in the consideration of the exercise of personal jurisdiction over a nonresident defendant. Zippo Manufacturing Co., 952 F.Supp. at 1124. At one end of the spectrum, there are situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states that "involve the knowing and repeated transmission of computer files over the Internet." Zippo Manufacturing Co., 952 F.Supp. at 1124. In that situation, personal jurisdiction is proper. At the other end of the spectrum, there are situations where a defendant merely establishes a passive website that does nothing more than advertise on the Internet. With passive websites, personal jurisdiction is not appropriate. Zippo Manufacturing Co., 952 F.Supp. at 1124. In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer. In this middle ground, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." Zippo Manufacturing Co., 952 F.Supp. at 1124.
The Zippo sliding scale was adopted by the U.S. Fifth Circuit in Mink v. AAAA Development LLC, 190 F.3d 333, 336 (5th Cir.1999), and has been utilized in subsequent cases. See Revell v. Lidov, 317 F.3d 467 (5th Cir.2002); Percle v. SFGL Foods, Inc., 356 F.Supp.2d 629 (M.D.La.2004). In Mink, the Fifth Circuit considered a defendant's website that was accessible to consumers in the forum state and that contained information about its products and services. The website included an electronic e-mail address, a toll-free number, and a printable mail-in order form. Noting that no orders could be taken through the website, the court found it to be "passive advertisement," which was not grounds for the exercise of personal jurisdiction. Mink, 190 F.3d at 336-37.
The Zippo sliding scale has been utilized by the Louisiana Third Circuit in Williams v. Frank Parra Auto Plex, Inc., XXXX-XXXX, pp. 6-7 (La.App. 3 Cir. 3/22/06), 929 So.2d 755, 760-61. In Williams, one defendant operated an interactive website that permitted exchange of information with Louisiana residents through live "chat rooms." Again, customers of that defendant could not use the website to make purchases. Also, the second Williams defendant's website merely contained a toll-free number for contacting the nonresident *435 defendant. Williams, XXXX-XXXX at pp. 2-3, 929 So.2d at 757-58. These facts were found to be insufficient to establish minimum contacts by either defendant with Louisiana.
We find Zippo and its progeny to be instructive in examining Internet websites for the exercise of personal jurisdiction over nonresident defendants.[2] Based on the criteria set forth in Zippo, we are compelled to categorize Tuff Coat's website as more closely aligned to the "passive" end of the spectrum such that it is improper for Louisiana to exercise personal jurisdiction over it.
As previously noted, web users are not allowed to make purchases from Tuff Coat online. Nor is this a case wherein web users receive regular or repeated information that can be downloaded from Tuff Coat's website. The extent of interactivity is limited to the invitation to actual customers to make a one-time contact with Tuff Coat, to be initiated by the customers, to have their names placed on a web page list, if they so desire. Otherwise, the website merely provides promotional and contact information regarding Tuff Coat and its products.
In this instance, we find that Tuff Coat's actions with regard to its Internet website do not rise to the level of "purposeful availment" of Louisiana's law such that it could expect to be haled into a Louisiana court. Moreover, under the particular facts presented herein, we find that Tuff Coat's sales to five Louisiana entities were "fortuitous" within the meaning of World-Wide Volkswagen, 444 U.S. at 295, 100 S.Ct. at 566. Simply put, Tuff Coat lacks sufficient minimum contacts with this state to justify Louisiana's exercise of personal jurisdiction over it.

CONCLUSION
Accordingly, the judgment of the district court sustaining Tuff Coat's declinatory exception raising the objection of lack of personal jurisdiction is hereby affirmed. Quality Design and Construction, Inc. is to bear all costs of this appeal.
AFFIRMED.
WHIPPLE, J., dissents and assigns reasons.
WHIPPLE, J.
I dissent from the majority's holding herein that Tuff Coat lacks sufficient minimum contacts with Louisiana to justify the exercise of personal jurisdiction over it.
Examining the activity and commercial nature of the available exchange of information between Tuff Coat and Internet web users in light of Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119 (W.D.Pa.1997), I find Tuff Coat's website more properly requires a "middle of the spectrum" designation. Internet users are allowed and specifically invited to interact with the website by exchanging information. Moreover, "satisfied customers" are designated on the website as part of Tuff Coat's marketing strategy, with a geographic notation of the customer's location *436 (by state) and a willingness to serve as a reference for future customers.
Nevertheless, even such a "middle of the spectrum" designation is not the single determinative factor. As stated in International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945), and reiterated in Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985) "court[s] long ago rejected the notion that personal jurisdiction might turn on `mechanical' tests." The ultimate question remains: whether the defendant's contacts with the state are of such a quality and nature that it could reasonably expect to be haled into court in the forum state.
Tuff Coat knew the results of sales contracts to Louisiana purchasers would be the use of Tuff Coat's product by Louisiana companies and Louisiana's citizens. In addition, the sales were entirely within Tuff Coat's control. Consequently, I do not find that Tuff Coat's sales to Louisiana companies were "fortuitous" within the meaning of World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980). When a defendant makes a conscious choice to conduct business with the residents of a forum state, "it has clear notice that it is subject to suit there." World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567. Tuff Coat had no obligation to sell to residents of Louisiana; it chose to do so, presumably for profit. See Zippo Manufacturing Co., 952 F.Supp. at 1124-25. Such a choice and substantial connection gives Tuff Coat notice that it is subject to suit in Louisiana, by effectively and purposefully availing itself of the benefits and protections of Louisiana's laws. As found in Zippo Manufacturing Co., 952 F.Supp. at 1126, if Tuff Coat had not wanted to be amenable to jurisdiction in Louisiana, it could have refused to market or sell to Louisiana residents.
In addition, while the fact that a nonresident has contracted with a resident of the forum state is, by itself, not singularly sufficient to justify personal jurisdiction over the nonresident, the requisite contacts may be supplied by additional factors associated with the contract, including contemplated future consequences. Burger King Corp., 471 U.S. at 478-79, 105 S.Ct. at 2185. In this instance, Tuff Coat engaged in a marketing scheme designed to actively seek future relationships with Louisianians. As shown in the copies of Tuff Coat's Customers' page and Home page from its Internet website appearing of record, Tuff Coat prominently lists various recent marine and boating industry customers. The Customers' page invites potential customers to view the listing of recent customers, invites website users to become a Tuff Coat customer, and solicits such customers to add their names to the published list. As noted by the majority, each customer is specifically identified by city and state or by state. Accordingly, Bollinger Shipyards was clearly included on the customer list and unmistakably identified as a Louisiana entity.
The maintenance of an Internet website that openly solicits potential customers by utilizing present and past customers, identified by state, is clearly a marketing tool designed to target future customers in that state, with the goal of increased sales. Furnishing a present customer's location does more than invite inquiry by potential customers; such acts are clearly intended to target and market the products to similarly located customers. Indeed, including, as the single identifying feature, the geographic state of big-name customers in advertising and information dissemination cannot be viewed as anything but a marketing *437 tool; nor can it be denied that such information seeks to increase contacts and sales to neighboring businesses.
Considering the second prong of the due process analysis, I find the exercise of personal jurisdiction over Tuff Coat comports with "traditional notions of fair play and substantial justice." International Shoe Co., 326 U.S. at 316, 66 S.Ct. at 158. While there may be a burden on Tuff Coat to litigate in Louisiana, it would be equally, if not more, burdensome on Quality Design to litigate in Colorado. Virtually all of the witnesses and the evidence necessary for trial in this matter are located in Louisiana. Louisiana has a fundamental interest in ensuring that its resident citizens are afforded the protections of Louisiana law. Lastly, the particular application of Tuff Coat's product to a public children's "sprayground" is of significant interest to Louisiana. Weighing all these factors, I am not persuaded that exercising jurisdiction over Tuff Coat would offend traditional notions of due process.
In sum, while the majority herein correctly cites the applicable law, it nonetheless fails to properly apply it. Instead, under the approach adopted by the majority, virtually every merchant can do business in and every dangerous product can be introduced into the State of Louisiana with impugnity, so long as the merchant categorizes its electronic marketing plan as a mere dissemination of information. For these reasons, I respectfully dissent. Given the record and applicable legal precepts, I would reverse the trial court's dismissal of the petition and remand for further proceedings.
NOTES
[1] The record establishes that this is exactly what occurred in the case sub judice. Quality Design initiated a phone call to Tuff Coat, after apparently discovering Tuff Coat's website on the Internet. No negotiations took place; Quality Design simply made a telephonic order, after which Tuff Coat shipped the product "FOB Montrose, Colorado."
[2] Tuff Coat cites and relies on Coastal Credit Co., Inc. v. CSS, Inc., 96-0797 (La.App. 3 Cir. 12/11/96), 685 So.2d 464, to avoid the exercise of personal jurisdiction over it; however, the facts of that case did not involve a nonresident's maintenance of an Internet website. In Coastal Credit, 96-0797 at pp. 2-3, 685 So.2d at 465-66, CSS, a Florida company, sold computer software to several Louisiana customers after CSS received an unsolicited phone call from a Louisiana resident. CSS mailed the software directly to offices in Louisiana. Coastal Credit, 96-0797 at p. 3, 685 So.2d at 466. This was found to be insufficient for Louisiana to exercise jurisdiction over CSS. Coastal Credit, 96-0797 at p. 6, 685 So.2d at 468.