JOY COSSICH LOBRANO, Judge.
11 Plaintiffs, BioClin, BV (“BioClin”), and Floris Koumans, appeal a trial court judgment dismissing their petition for damages and injunctive relief on declinatory exceptions of lack of personal jurisdiction raised by the defendants, MultiGyn USA, LLC (“MultiGyn USA”); Karl Bonga; and Joyce Bonga. For the following reasons, we affirm the judgment.
BioClin is a Dutch Corporation that was founded in 1989 by Floris Koumans, its current Director. The company markets specially-formulated feminine hygiene products under the name “Multi-Gyn” and owns the international trademarks on both “Multi-Gyn” and the “stylized female form” logo that appears on its products. BioClin also holds a number of “Multi-Gyn” registered domain names for internet use.
The Bongas were married and residing in Illinois when Joyce Bonga entered into two agreements with BioClin in 2001. The first, a distribution agreement, granted Joyce Bonga the exclusive rights to distribute, market, and sell BioClin products in the United States. The second, a confidentiality agreement, required | Joyce Bonga to keep secret all confidential information regarding BioClin’s trademarks and products and to obtain the express written consent of the company before disclosing any confidential information to a third party.
In May 2004, BioClin terminated the contracts with Joyce Bonga for failure to meet her sales goals. In the meantime, however, Karl Bonga had formed Multi-Gyn USA, registered the domain name “www.multigyn.com” and began selling *636 Multi-Gyn and MultiGyn products via the internet. The Bongas divorced in 2007, and eventually both became residents of Florida.
In March 2011, BioClin, through its attorney, sent Karl Bonga a cease and desist letter, threatening to sue him, MultiGyn USA, and Joyce Bonga for unfair trade practices and trademark infringement if he continued to sell the products via the internet website. Karl Bonga refused to remove the website and continued to sell the products. Moreover, in October 2011, he filed articles of organization with the Florida Secretary of State’s office, registering MultiGyn USA as a limited liability corporation.
In November 2011, the plaintiffs filed the instant lawsuit to enjoin Karl Bonga, MultiGyn USA and Joyce Bonga from selling the products and using the MultiGyn name, the stylized female form logo, and the “vnuw.multigyn.com” domain. The plaintiffs also sought damages pursuant to the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401 et seq.
In response, Karl Bonga and MultiGyn USA filed exceptions of lack of personal jurisdiction, no cause of action, no right of action and res judicata. Joyce |sBonga, individually, filed an exception of lack of personal jurisdiction. Following a hearing, the trial court sustained the exceptions of lack of personal jurisdiction.
BioClin and Koumans appealed, raising four assignments of error. The first three assignments collectively address the trial court’s consideration of the affidavits submitted by Karl Bonga, BioClin, and Joyce Bonga.[1] The plaintiffs argue that the trial court erred in considering the affidavits, contending that the affidavits were hearsay and not proper evidence on an exception of lack of personal jurisdiction. We disagree. This court and other courts have allowed the submission of affidavits in proceedings involving exceptions of lack of personal jurisdiction. See Marchand v. Asbestos Defendants, 2010-0476, p. 9 (La.App. 4 Cir. 11/10/10), 52 So.3d 196, 201, writ denied, 2010-2732 (La.2/11/11), 56 So.3d 1002; see also Quality Design & Constr. v. Tuff Coat Mfg., Inc., 2005-1712, pp. 5-6 (La.App. 1 Cir. 7/12/06), 939 So.2d 429, 433.
Next we address whether the trial court erred in sustaining the exceptions of lack of personal jurisdiction.
This Court reviews the trial court’s dismissal of a claim for lack of personal jurisdiction de novo. See Walker v. Super 8 Motels, Inc., 2004-2206, p. 4 (La.App. 4 Cir. 12/7/05), 921 So.2d 983, 986. The party that seeks to invoke personal jurisdiction bears the burden of establishing such jurisdiction exists. This burden is Lsatisfied upon a prima facie showing that jurisdiction is appropriate, de Reyes v. Marine Management and Consulting, Ltd., 586 So.2d 103, 107 (La.1991).
Our authority to exercise jurisdiction over a non-resident defendant is granted under the Louisiana Long-arm Statute, LSA-R.S. 13:3201.[2] This authori *637 ty is limited by the due process requirements of the Fourteenth Amendment. U.S.C.A. Const. Amend. 14; LSA-R.S. 18:3201. The due process test was first established by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 157, 90 L.Ed. 95 (1945). There are 15two prongs of the due process test that must be satisfied before personal jurisdiction can be exercised. Id. First, the nonresident defendant must have “minimum contacts” with the forum state; and second, the exercise of personal jurisdiction in the forum state must not violate the basic notions of “fair play and substantial justice.” When applying the test the quality and nature of the activity must be considered. See id.
There are two distinct types of jurisdiction that a state may exercise over a non-resident defendant, “general” and “specific.” A court may exercise general jurisdiction over a defendant when the defendant has engaged in continuous and systematic contacts with the forum state, but the contacts are unrelated to the lawsuit. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16, 104 S.Ct. 1868, 1872-73, 80 L.Ed.2d 404 (1984). A court may exercise specific jurisdiction over a defendant when the alleged cause of action is related to or arises out of the defendant’s contact with the state. Id., 466 U.S. at 414 n. 8, 104 S.Ct. at 1872 n. 8. General jurisdiction has not been asserted in the instant case. Rather, the plaintiffs seek to assert specific jurisdiction over Karl Bonga, MultiGyn USA, and Joyce Bonga because Karl Bonga allegedly maintains an interactive website that has allowed Louisiana residents to purchase Multi-Gyn products.
In order for a plaintiff to satisfy its burden of proving minimum contacts with the forum state, there must be a showing that the defendant purposefully availed itself of the laws and protections of the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). frOnce the plaintiff demonstrates that minimum contacts with the forum state exists, “a presumption of reasonableness of jurisdiction arises’ and the burden then shifts to the opposing party to prove the assertion of jurisdiction would be so unreasonable in *638 light of traditional notions of fair play and substantial justice as to overcome the presumption of reasonableness created by the defendant’s minimum contacts with the forum.’ ” Ruckstuhl v. Owens Corning Fiberglas Corp., 98-1126, p. 6 (La.4/13/99), 731 So.2d 881, 886 (citing de Reyes v. Marine Mgmt. and Consulting, Ltd., 586 So.2d 103, 107 (La.1991)).
In general, questions of personal jurisdiction are factual determinations that must be weighed on a case by case basis. There are no clear-cut rules or a set jurisdictional formula that can be applied in determining whether personal jurisdiction conforms with the notion of “fair play and substantial justice.” See Burger King Corp., 471 U.S. at 466, 105 S.Ct. at 2184. To the contrary, “... any inquiry into ‘fair play and substantial justice’ necessarily requires determinations ‘in which few answers will be written in black and white. The greys are dominant and even among them the shades are innumerable.’ ” Id., 471 U.S. at 486 n. 29, 105 S.Ct. at 2189 n. 29 (citing Kulko v. California Superior Court, 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978)). As relevant as that statement was when it was written, the world wide use of the internet has expanded the grey areas of personal jurisdiction. See Swoboda v. Hero Decks, 2009-1303, p. 4 (La.App. 4 Cir. 3/31/10), 36 So.3d 994, 998.
|7In Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1124 (W.D.Pa.1997), the court employed a “sliding scale” approach to determine whether a website has minimum contacts with a forum state sufficient to invoke personal jurisdiction. The sliding scale categorizes the websites activities as passive or interactive. Id. A passive website that does little more than make information available to those who are interested in it does not provide the minimum contacts that warrant the exercise of personal jurisdiction. Id. (citing Bensusan Restaurant Corp. v. King, 937 F.Supp. 295 (S.D.N.Y.1996)). On the other end of the spectrum is the interactive website where business is clearly done through the website. Those websites typically have repeated contacts and transmissions and may also allow participants to enter into contracts. Under those circumstances personal jurisdiction is proper. Zippo, 952 F.Supp. at 1124. However, when a website falls somewhere in the midrange of the scale and information is exchanged between the host and user, but not on an ongoing basis, the court must look to the extent of the interactivity and commercial nature of the exchange of information to determine whether personal jurisdiction should be exercised. Id. (citing Maritz, Inc. v. Cybergold, Inc., 947 F.Supp. 1328 (E.D.Mo.1996)).
For instance, in Quality Design & Constr. v. Tuff Coat Mfg., Inc., supra, 2005-1712, 939 So.2d 429, and later in Crummey v. Morgan, 2007-0087 (La.App. 1 Cir. 8/8/07), 965 So.2d 497, the Louisiana First Circuit Court of Appeal utilized the Zippo sliding scale approach as a guide for determining personal jurisdiction. |sIn both cases, the cause of action arose from an allegedly defective product purchased by a Louisiana citizen.
Tuff Coat manufactured a polyurethane coating for cement. Quality Design & Constr., 2005-1712, p. 2, 939 So.2d at 431. Tuff Coat’s product, Ultra Tuff, was used in a Louisiana water park. Id. The pigment from the Ultra Tuff leached and damaged the water purification system and required repair and recoating of the covered surfaces. Id. The construction company filed suit against Tuff Coat and Tuff Coat excepted on the grounds of personal jurisdiction. Id. Tuff Coat operated a website that provided a telephone number for or *639 dering the products and a list of other Louisiana businesses that had used the products. Id. at p. 6, 939 So.2d at 433. Tuff Coat argued that their website was purely informational and thus, passive. Id. The First Circuit, using the Zippo sliding scale, found that Tuff Coat’s website was passive and even though Tuff Coat’s products had been purchased by at least five Louisiana businesses, there was no purposeful availment “of Louisiana’s law such that it could expect to be haled into a Louisiana court.” Id. at p. 9, 939 So.2d at 435.
The Crummey case involved defendants that used a third-party website to advertise and sell a recreational vehicle. Crummey, 2007-0087, p. 2, 965 So.2d 497, 499. The defendants and the vehicle were located in Texas. Id. The record indicated that Crummey found the vehicle online, had communicated with the seller over the telephone, and used telephone contact to place a deposit on the vehicle with a credit card. Id. The defendants offered to deliver the vehicle to | ^Louisiana, but Mr. Crummey chose to travel to Texas to take possession of it. Id. The transfer of ownership took place in Texas and Mr. Crum-mey took possession of the vehicle and began his drive back to Louisiana. Id. at pp. 2-3, 965 So.2d at 499. Prior to crossing the Texas/Louisiana border, the vehicle stopped running. Id. at p. 3, 965 So.2d at 499. The defendants refused to submit a full refund for the vehicle and Mr. Crum-mey filed suit in Louisiana. Id. The defendants filed an exception of lack of personal jurisdiction. Id.
Using the Zippo sliding scale and distinguishing the Tuff Coat decision, the First Circuit found that there were appropriate minimum contacts to exercise personal jurisdiction. Id. at p. 12, 965 So.2d at 504. The Crummey court found that the repeated contact the defendants had with Louisiana beginning with the advertising of the vehicle over the internet, then the negotiations and the tender of money over the telephone supported its finding that the defendants had purposefully availed themselves to the laws and protections of Louisiana. Id. The court also noted that the defendants had delivered two other vehicles to buyers in Louisiana. In dicta the court raised its concern for online buyers who would have no recourse in their home state against sellers who misrepresent products and/or sell defective products. Id.
More recently, in Swoboda, supra, 2009-1303, 36 So.3d 994, a case very similar to the instant one, this Court considered whether an internet merchandiser had established sufficient contacts with Louisiana to be subjected to personal jurisdiction. In Swoboda, Parody Productions published novelty playing cards and | insold them over the internet. Id. at p. 1, 36 So.3d at 996. The product at issue was the “Hero Decks” which featured well known sports figures, including Ron Swoboda, a former player with the New York Yankees. Swoboda claimed he had never given Parody permission to use his image and filed suit to enjoin the company from using his name and likeness and for damages for violating his right to publicity and unjust enrichment. Id. Parody raised an exception of lack of personal jurisdiction, which the trial court sustained. Id. at pp. 1-2, 36 So.3d at 996.
On appeal, this Court acknowledged that although the Zippo sliding scale is a useful guide when examining the extent to which websites are present in a forum state, it does not eliminate the necessity of the Court to independently review the relationship among the forum, the defendant, and the litigation when determining personal jurisdiction. Id. at pp. 7-8, 36 So.3d at 999 (citing A&L Energy, Inc. v. Pegasus *640 Group, 00-3255 (La.6/29/01), 791 So.2d 1266). The Court noted that, as an internet merchandiser, Parody sold playing cards on an interactive website that would fall midrange on the Zippo sliding scale. The record indicated that the playing cards could be purchased directly from the site. Other than the ability of Louisiana residents to access the website and purchase the merchandise, the record was void of any other contact Parody had with Louisiana. The Court also noted that once Parody refused to stop using Swoboda’s likeness, his attorney purchased a deck of the Mets playing cards over the internet shortly before filing suit against Parody. Id. at p. 8, 36 So.3d at 999. In view of the facts, the Court determined | n that extending personal jurisdiction over Parody would not comport with the notions of fair play and substantial justice. The Court affirmed the trial court, stating:
The pivotal question in this case is whether the plaintiffs counsel’s purchase from this website or the mere ability of Louisiana citizens to access the merchandise from the website constitutes Parody purposefully availing itself of the benefits and laws of Louisiana for this cause of action. The United States Supreme Court has maintained that “the mere unilateral activity of those who claim some relationship with the nonresident defendant cannot satisfy the requirement of contact with the forum state.” World[-Wide] Volkswagen, Corp. v. Woodson, 444 U.S. 286, 298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980) (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 [S.St.] [S.Ct.] 1228, 1239-40 [2 L.Ed.2d 1283 (1958) ]). Further, although the cause of action complained of in the plaintiffs petition stems from Parody’s manufacturing and selling of the playing cards, Mr. Swoboda’s cause of action as plead in his petition arose prior to his attorney’s purchase of the Mets cards in Louisiana. Thus, we find that the connexity between Parody’s contact with Louisiana and Mr. Swoboda’s cause of action are too attenuated to constitutionally exercise personal jurisdiction over Parody.
Id. at p. 8, 36 So.3d at 999.
In the instant case, the trial court found that Joyce Bonga was divorced from Karl Bonga in May 2007, had no interest in MultiGyn USA, was not an employee of MultiGyn USA, and has no website selling products in Louisiana. The trial court also found that Joyce Bonga has never distributed products in Louisiana and has no contacts that would subject her to the jurisdiction of a Louisiana court.
As to Karl Bonga and MultiGyn USA, the trial court, relying on the analysis in Swoboda, supra, found that Karl Bonga’s mere creation of a website, does not constitute purposeful availment of the forum benefits. The court pointed out that ligKarl Bonga presently resides in Florida and MultiGyn USA is a Florida corporation that operates a website whereby customers can purchase MultiGyn products through its online ordering feature. Like Parody in Swoboda, the trial court noted that MultiGyn USA has only shipped to Louisiana on one occasion — to Clyde McCoy, who identified himself as private investigator employed by the law firm representing BioClin.[3] Other than the ability of Louisiana residents to access the Multi-Gyn USA website to purchase merchandise, and the single website point-of-sale transaction between MultiGyn USA and McCoy, the record is void of any other *641 contact Karl Bonga and MultiGyn USA had with Louisiana.
Finally, the plaintiffs contend that the trial court erred by ignoring the affidavit of Devin Gregoire, which they submitted in opposition to the exceptions of lack of personal jurisdiction. Gregoire, the owner of an information technology consulting firm, averred that he visited the MultiGyn USA website and opined that it was fully interactive; non-exclusive, i. e. it did not exclude contact with Orleans Parish browsers; and engaged in repeated contact with this forum (Orleans Parish). Nothing in the record indicates that trial court did not consider Gregoire’s affidavit. Also, the affidavit does not necessarily contradict the affidavits submitted by the Karl Bonga and MultiGyn USA. We find no merit to this argument.
After reviewing the record and given the facts and circumstances of this case, we agree with the trial court’s findings that the plaintiffs have not established that Joyce Bonga, Karl Bonga and MultiGyn USA have availed themselves of the jurisdiction of the Louisiana courts and extenuating personal jurisdiction over them would not comport with the notions of fair play and substantial justice.
| ^Accordingly, for the reasons herein, the trial court judgment sustaining the exceptions of lack of personal jurisdiction is affirmed.
AFFIRMED.

. The record indicates that the plaintiffs objected to the introduction into evidence of the affidavits. The trial court overruled the objection as to the affidavits of Karl Bonga and BioClin. The trial court sustained the objection as to Joyce Bonga’s affidavit because she had not submitted the affidavit to the court at least forty-eight (48) hours prior to the hearing as per the court’s March 8, 2012 order. However, the trial court allowed a proffer of the affidavit at the conclusion of the hearing.

. LSA-R.S. 13:3201. Personal jurisdiction over nonresidents
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising *637 from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
(2) Contracting to supply services or things in this state.
(3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.
(4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.
(5) Having an interest in, using or possessing a real right on immovable property in this state.
(6) Non-support of a child, parent, or spouse or a former spouse domiciled in this state to whom an obligation of support is owed and with whom the nonresident formerly resided in this state.
(7) Parentage and support of a child who was conceived by the nonresident while he resided in or was in this state.
(8) Manufacturing of a product or component thereof which caused damage or injuiy in this state, if at the time of placing the product into the stream of commerce, the manufacturer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the manufacturer's marketing practices. B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.

. See Affidavit of Karl Bonga, p. 1.